# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:05CR94 |
| vs. ) | |
| ) | REPORT AND |
| ESTRELLA ALBA-CRUZ, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's MOTION TO SUPPRESS (#66). The motion was heard August 9, 2005 and submitted for decision when the hearing transcript (#81) was filed on August 20, 2005.

The defendant moves the court for the suppression of all evidence obtained as a result of the March 3, 2005 search of her residence at 12442 Bell Drive, Omaha, Nebraska. In support of the motion the defendant alleges her verbal consent as well as her signed permission to search were invalid based upon the facts and circumstances surrounding the consents.

For the reasons discussed below, I recommend that the motion be denied.

## FACTUAL BACKGROUND

Brian Heath testified that he is a ten-year employee of the Omaha Police Department, currently assigned to the Safe Streets Gang Task Force (5:18-6:3). On March 3, 2005 while assigned to the major crimes unit, he was directed to assist officers at 12442 Bell Drive, Omaha, Nebraska (10:6-13; 6:11-14).

Heath testified that he arrived at the Bell Drive location at approximately 10:40 a.m., and was met by Officer Jennifer Hansen. He and Hansen approached the front door of the house where he anticipated Spanish might need to be spoken (11:18-12:1).

Heath testified that he is a Spanish speaker. He learned Spanish in the United States Air Force in 1988 at the Defense Language Institute in Monterrey, California, where he completed seven months of intensive training in Spanish, followed by six years as a Spanish linguist for the United States Air Force. While he primarily served in Omaha, he did see temporary duty in Panama, Puerto Rico, and other countries throughout South and Central America. Heath also noted he is certified by the Omaha Police Department as a Spanish-speaking officer (7:9-8:8).

Heath testified that after he knocked on the door, the defendant answered the door. Heath identified himself by showing his badge and ID and asked if he could come in and talk to her (12:1-4). At the time Heath was wearing a suit (11:13-15) and Officer Hansen was dressed in a police uniform, which included her weapon in a holster (13:16-21). While Heath does not recall exactly what the defendant said to him, she did state that the officers could come in (14:6-9).

After entering the house, Heath and Hansen sat on the defendant's couch and told her that they were assisting the narcotics unit with a long-term narcotics investigation, they had information from the investigation that her address was possibly involved, and that he wanted permission to search the residence for narcotics or evidence of narcotics activity (14:14-22).

The defendant responded that she understood.  Heath noted she acted slightly surprised (14:23-15:8).  The defendant stated that she lived at the residence with her children, and gave Heath verbal permission to search (15:10-21).  Heath then filled out a written permission to search form (Ex. 1), read it, verbatim, to the defendant (17:12-24) and observed the defendant place her signature on the form (17:25-18:5).  Heath noted that when he spoke to the defendant he spoke to her in Spanish (12:10-14) and that after the permission to search form was signed and a search initiated, he Mirandized the defendant and conducted a brief interview (20:1-6).  Heath observed the defendant was cooperative, but seemed a little bit surprised (20:23-21:6).

On cross-examination Heath admitted that another policeman, Officer Clark, a narcotics detective who was not in uniform, may have been present during part of the time he had contact with the defendant (25:15-24).  However, Heath denied making any promises or inducements to the defendant, and denied telling her it would be easier or go better for her if she cooperated or signed the permission (25:25-26:5).  Heath admitted he never informed the defendant that she had a constitutional right to refuse the search, and admitted that the permission to search form does not state that the defendant has a constitutional right to deny permission (27:12-24).  Heath also admitted that when he asked the defendant if he could come in and talk with her, he never informed her she could refuse (30:13-22).

On direct examination Estrella Alba-Cruz testified that she remembered meeting Heath and a young lady after they knocked on her front door March 3, 2005 (34:6-23).  She

remembers being told her house was under suspicion for the sale of drugs and when the officer entered the house she was told that they needed to search the house. She testified that she then asked the officers if they had a search warrant (36:4-9). The defendant admitted that when Heath entered the house he asked her if he could come in and she replied that it was all right to come in (36:12-17). The defendant testified that Heath gave her a piece of paper and said it was the order for them to search the house and that it would be better for her to cooperate with them (36:20-24). The defendant then asked Heath if she could deny the search and Heath replied it would be better if she were to cooperate with him (37:6-10).

On direct examination Alba-Cruz testified that after she gave oral permission but before she signed the written permission, more than five officers appeared in her home (37:16-25).

On cross-examination Alba-Cruz testified she was told by Heath that she would be better off if she cooperated with him, that she wasn't going to sign the paper, but Heath said she would be better off if she cooperated (38:18-39:1). The defendant admitted signing the form, but denies it was read to her (39:2-13).

On redirect examination Alba-Cruz testified she signed the form because Heath told her she had to cooperate, because her house was under suspicion for drugs, and it would be better for her if she cooperated (40:1-9). She noted that prior to signing, she had never been told she had a constitutional right to object to the search (40:10-12).

**LEGAL ANALYSIS**

The defendant contends that the evidence found at 12442 Bell Drive should be suppressed because the officers conducted the search without a valid consent. The government argues that the search of the premises was constitutionally justified by two voluntary consents. I find the consents of the defendant were voluntary and the motion to suppress should be denied.

The Eighth Circuit has never disapproved the "knock and talk" investigation technique. *See, e.g., United States v. Heath*, 58 F.3d 1271, 1272 n.3 (8th Cir.), *cert. denied*, 516 U.S. 892 (1995) (reflecting testimony that a "knock and talk" is a casual conversation between the deputies and the target of an investigation, with no show of force); *United States v. Pennington*, 287 F.3d 739, 746 (8th Cir.), *cert. denied*, 537 U.S. 1022 (2002) (evidence obtained as the result of a "knock and talk" was not suppressed).

Police may conduct a search of someone's home or person, even without a warrant or probable cause, if that person voluntarily consents to the search. *See United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990); *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000); *see also United States v. Deanda*, 73 F.3d 825 (8th Cir. 1996). To determine whether a consent is voluntary, the court must examine the totality of the circumstances, including the characteristics of the accused and the nature of the encounter. *See Bradley*, 234 F.3d at 366. The government has the burden of proving the consent was voluntary. *United States v. Parris*, 17 F.3d 227, 229 (8th Cir.), *cert. denied*, 51 U.S. 1077 (1994); *United States*

*v. Heath*, 58 F.3d at 1275. "The prosecution need not prove that the individual is fully aware of his or her rights under the Fourth Amendment in order to establish a voluntary consent." *Heath*, 58 F.3d at 1275 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973)).

Courts in the Eighth Circuit generally consider the "*Chaidez* factors" in determining if a consent was voluntary:

> "Characteristics of persons giving consent" which may be relevant to the question include:
>> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.
>
> [906 F.2d] at 381 (internal citations omitted). Characteristics of "the environment in which consent was given" include:
>> whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.
>
> *Id*. (internal citations omitted). The factors should not be applied mechanically, Id., and no single factor is dispositive or controlling. *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir. 1993).

*United States v. Bradley*, 234 F.3d at 366.

This case involves a knock-and-talk by two officers (only one of whom was in uniform) which resulted, after a very brief period of time, in a verbal consent by the defendant to search her home, followed shortly by a written consent.[1]

---

[1] The defendant raises no issue either in her motion or at the hearing that she did not understand Officer Heath when he spoke to her in Spanish.

The environment in which both consents were secured in this case involves a very brief length of time from initial contact to the verbal and signed consent; the defendant was not in custody or under arrest when the consents were given; all of the events occurred in the defendant's home; and there is no evidence the defendant did anything but stand silent during the search.

The only *Chaidez* factor raised by the defendant is whether or not the police made promises or misrepresentations to her to gain her consents. The testimony of Officer Heath and the defendant is diametrically opposed as to whether or not she was told that it would be better for her if she cooperated and also as to whether or not Heath did or did not read the defendant the permission to search written form before she signed it. I find the testimony of Officer Heath to be credible and, therefore, applying the *Chaidez* factors, I find the defendant voluntarily consented, both orally and in writing, to the search of her home. I do so with the knowledge that the *Chaidez* factors should not be applied mechanically and that no single factor is dispositive or controlling. After analyzing the totality of the circumstances of the contact between the police and this defendant, I find no coercive action by the police, and given the totality of the circumstances I find that the verbal and written consents of the defendant were voluntarily given.

## RECOMMENDATION

For the reasons explained above,

**IT IS RECOMMENDED** TO THE HONORABLE LAURIE SMITH CAMP that the defendant's MOTION TO SUPPRESS (#66) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED September 20, 2005.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**